FILED

2018 MAR 29  PM 2: 54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL LERMA,<br>　aka "Pomona Mike,"<br>　aka "Big Mike,"<br>CHERYL PEREZ-CASTANEDA,<br>　aka "Cheryl Perez,"<br>　aka "Cheryl Castaneda,"<br>　aka "C,"<br>　aka "Cherri,"<br>JOSE MONTANO,<br>　aka "Silent,"<br>　aka "Bill,"<br>INEZ PEREZ,<br>　aka "Nezzie,"<br>　aka "Inez Lerma,"<br>SEFERINO GONZALEZ,<br>　aka "Spooky,"<br>CARLOS GONZALEZ,<br>　aka "Popeye,"<br>JUAN SANCHEZ,<br>　aka "Squeaks,"<br>JOSE VALENCIA GONZALEZ,<br>　aka "Swifty,"<br>JOSE MARTINEZ,<br>　aka "Slim,"<br>KELLY DESHANNON,<br>TRISHA PEREZ,<br>　aka "Trisha Aguirre,"<br>　aka "Trish," | CR **18CR00172-GW**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. §§ 1959(a)(1), (3), (5), (6): Violent Crimes in Aid of Racketeering Activity; 18 U.S.C. § 2119(2): Attempted Carjacking; 21 U.S.C. § 846: Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C): Possession with Intent to Distribute Controlled Substances; 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii): Possession, Use, Carrying, Brandishing, and Discharging of a Firearm During and in Relation to, and in Furtherance of, Crimes of Violence and Drug Trafficking Crimes; 18 U.S.C. § 924(o): Conspiracy to Possess, Use, Carry, and Brandish a Firearm During and in Relation to, and in Furtherance of, Crimes of Violence; 18 U.S.C. § 922(g)(1): Felon in Possession of Firearms and Ammunition; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. § 1963, 21 U.S.C. § 853, 18 U.S.C. § 924(d): Criminal Forfeiture] |

1  DANIEL DIAZ,
    aka "Bugsy,"
2    aka "Fam Bam," and
   VICTOR INCLAN,
3
               Defendants.
4

5

6      The Grand Jury charges:

7                    GENERAL ALLEGATIONS

8      1.    The Mexican Mafia, also known as "La Eme," is a "gang of

9  gangs" comprised mostly of senior members of southern California

10 Hispanic street gangs who have come together to control and profit

11 from the activities of Hispanic gangs operating in southern

12 California.  La Eme was established in the 1950s by Hispanic youth

13 inmates at the Duell Vocational Facility, but over the decades has

14 morphed into an international criminal organization.  Today, there

15 are approximately 140 full members of the Mexican Mafia, referred to

16 as "carnales" or "brothers."  The majority of Mexican Mafia members

17 are incarcerated in California prisons or jails or in federal

18 prisons.  By exercising control over inmates in the prison and jail

19 systems, primarily through violence and threats of violence, the

20 Mexican Mafia is able to control the activities of southern

21 California Hispanic criminal street gangs, both inside and outside

22 custody facilities.  Mexican Mafia members and associates wield such

23 power over the prison and jail populations that they are able to

24 order that acts of violence be carried out not only against other

25 prison or jail inmates, but also against street gang members and

26 others outside of prison or jail.

27     2.    Members of the Mexican Mafia have divided control of, and

28 the rights to criminal proceeds from, nearly all penal facilities in

California, including state prisons and county jail systems.
Similarly, members of the Mexican Mafia have divided the rights to
criminal proceeds from the activities of southern California Hispanic
criminal street gangs in various southern California neighborhoods.

3.     Often, one member of the Mexican Mafia has control of and
rights to a specific facility.  That member, whether incarcerated in
that facility or not, will control the smuggling of drugs into the
facility, the collection of taxes from the sale of those drugs,
extortion within that facility (including the "kitty" and other fines
discussed below), and the maintenance of discipline within the
facility.  In some cases, different members of the Mexican Mafia may
control different parts of the same facility.

4.     Similarly, members of the Mexican Mafia have divided
control of and the rights to "taxes," or a share of criminal proceeds
from criminal activities including drug trafficking, from nearly all
Hispanic gangs in southern California.  Generally, one member of the
Mexican Mafia has control of and rights to a specific area; that
Mexican Mafia member will control the sale of drugs within that area,
the collection of taxes from that area, and the maintenance of
discipline over gang members from that area.

5.     The division of control of custody facilities and
neighborhoods is generally agreed upon by the members of the Mexican
Mafia, although there are occasionally disputes among members as to
the division.  Once a Mexican Mafia member acquires control of a
custody facility or neighborhood, he can generally operate that
custody facility or neighborhood without interference from other
members.  The Mexican Mafia member in control of a custody facility
///

3

1  or neighborhood will put together a team of trusted associates to
2  control the custody facility or neighborhood.

3      6.   The Mexican Mafia is split into two major subgroups,
4  "State" and "Federal."  A State Mexican Mafia member can control
5  state prisons, southern California jails, and southern California
6  neighborhoods, but generally not federal facilities.  A Federal
7  Mexican Mafia member incarcerated a federal prison can control
8  federal facilities anywhere in the country, and southern California
9  neighborhoods, but usually cannot control a state prison or a county
10  jail.

11      7.   To become a Mexican Mafia member, a Hispanic gang member
12  generally must have a distinguished reputation for "putting in work"
13  on behalf of the Mexican Mafia, meaning the gang member has murdered
14  or assaulted enemies and rivals of Mexican Mafia members.
15  Prospective members are also expected to have provided financial
16  assistance to Mexican Mafia members, and to have followed the Mexican
17  Mafia rules that govern the streets or correctional institutions.

18      8.   Mexican Mafia members carry out their criminal activity
19  with the help of associates.  Some of these trusted associates act as
20  "shot-callers," that is, high-level associates who have been given
21  the authority to conduct affairs of the Mexican Mafia, such as
22  collecting extortion and drug money and enforcing discipline in their
23  particular areas of control.  A "facilitator" is the highest level
24  shot-caller and works directly under the authority of the Mexican
25  Mafia member who appointed him.  The facilitator coordinates the
26  activities of the other shot-callers and is responsible for ensuring
27  that other shot-callers carry out the Mexican Mafia member's orders
28  ///

4

in their area of responsibility, whether in a neighborhood or a custody facility.

9. Members of Hispanic street gangs in southern California are referred to as "Surenos" and fall under the control of the Mexican Mafia. "Surenos" may also be referred to as "Southsiders." Additionally, the Mexican Mafia considers Mexican nationals, referred to as "Paisas," and Hispanic-American citizens who are not members of a gang, generally referred to as "Residents," to fall under the Mexican Mafia's control while in a custody facility, and trusted Residents and Paisas may participate in or be given shot-caller positions in Mexican Mafia affairs.

10. Members and associates of street gangs controlled by and/or affiliated with the Mexican Mafia must pay "taxes" to members and associates of the Mexican Mafia for permission to maintain control over their territories in order to distribute drugs and engage in other criminal activity. This system of "taxation" amounts to widespread extortion. These "taxes" also ensure the protection of the gang's members once they enter prisons or jails. The "taxing" and control applies to activities both in and out of jail or prison. Indeed, a jail or prison, or a floor, yard, or other unit of a jail or prison is considered by the Mexican Mafia to be territory just as much as a neighborhood.

11. Surenos, whether in a custody facility or in a neighborhood, operate as soldiers or workers for the Mexican Mafia. Indeed, being loyal to the Mexican Mafia is an integral part of being a southern California Hispanic street gang member, and it is openly understood that when individuals join such gangs that they are joining an entity loyal to the Mexican Mafia. Members of such gangs

are expected to, and are proud to, carry out the orders of the Mexican Mafia member in control of their neighborhood or custody facility, because doing work for the Mexican Mafia increases the gang member's status and reputation.  Some gangs proudly include in their name the number "13," denoting the letter M, or "eme" in Spanish, in order to demonstrate the gang's loyalty and allegiance to the Mexican Mafia.

COUNT ONE

[18 U.S.C. § 1962(d)]

1.   Paragraphs 1 through 11 of the General Allegations are re-alleged and incorporated by reference as if fully set forth herein.

A.   THE RACKETEERING ENTERPRISE

2.   At all times relevant to this Indictment, defendants MICHAEL LERMA, also known as ("aka") "Pomona Mike," aka "Big Mike" ("LERMA"), CHERYL PEREZ-CASTANEDA, aka "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri" ("PEREZ-CASTANEDA"), INEZ PEREZ, aka "Nezzie," aka "Inez Lerma" ("I. PEREZ"), SEFERINO GONZALEZ, aka "Spooky" ("S. GONZALEZ"), CARLOS GONZALEZ, aka "Popeye" ("C. GONZALEZ"), JUAN SANCHEZ, aka "Squeaks" ("SANCHEZ"), JOSE VALENCIA GONZALEZ, aka "Swifty" ("J.V. GONZALEZ"), JOSE MARTINEZ, aka "Slim" ("MARTINEZ"), KELLY DESHANNON ("DESHANNON"), TRISHA PEREZ, aka "Trisha Aguirre," aka "Trish" ("T. PEREZ"), DANIEL DIAZ, aka "Bugsy," aka "Fam Bam" ("DIAZ"), and VICTOR INCLAN ("INCLAN"), and others known and unknown to the Grand Jury, were members and associates of an organization engaged in, among other things, acts involving murder, kidnapping, robbery, extortion, trafficking in controlled substances, conspiracy and attempt to commit the foregoing acts, witness tampering, money laundering, and identity theft.  At all relevant times, this organization, known as the "Michael Lerma Cell of the Mexican Mafia," operated within the Central District of California and elsewhere.  The Michael Lerma Cell of the Mexican Mafia, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which engaged in, and the activities of which

7

1  affected, interstate and foreign commerce.  The Michael Lerma Cell of

2  the Mexican Mafia constituted an ongoing organization whose members

3  function as a continuing unit for a common purpose of achieving the

4  objectives of the enterprise.

5      3.    The Michael Lerma Cell of the Mexican Mafia operates for

6  the benefit of defendant LERMA and his associates.  The Michael Lerma

7  Cell of the Mexican Mafia conducts its activities by enforcing the

8  rules of the Mexican Mafia on areas within its control.  Using the

9  methods of the Mexican Mafia, the Michael Lerma Cell of the Mexican

10  Mafia carries out its goals of controlling drug trafficking

11  activities and the distribution of drug trafficking proceeds,

12  extortion, and the enforcement of Mexican Mafia rules (which are used

13  as a basis for extortion), in areas within its control, both inside

14  and outside of custody facilities.

15      4.    Pomona is a city in eastern Los Angeles County that is home

16  to a number of predominantly Hispanic street gangs that are loyal to

17  the Mexican Mafia.  At any time, one member of the Mexican Mafia may

18  exercise control over the illegal activities conducted by

19  predominantly Hispanic street gangs in and around the City of Pomona,

20  or control of these illegal activities in and around the City of

21  Pomona may be divided among different members of the Mexican Mafia.

22  At all times relevant to this Indictment, the Michael Lerma Cell of

23  the Mexican Mafia claimed control of Pomona and surrounding areas and

24  the profits from drug distribution and extortion activities in those

25  areas.

26      5.    Calipatria State Prison is a California State Prison in

27  Imperial County, California.  Control over Calipatria State Prison

28  has been divided among members of the Mexican Mafia.  At all times

1   relevant to this Indictment, the Michael Lerma Cell of the Mexican
2   Mafia claimed control of portions of Calipatria State Prison and the
3   profits from drug distribution and extortion activities in those
4   areas.

5       6.   California state prisons operate inmate trust accounts for
6   their inmates.  These accounts are provided for inmates to use to
7   purchase items such as food or hygiene products from the jail
8   commissary.  Members outside of the prison can place money into an
9   inmate's trust account.  At all times relevant to this Indictment,
10  the Michael Lerma Cell of the Mexican Mafia used inmate trust
11  accounts to deposit proceeds from its criminal activities, for the
12  benefit of defendant MICHAEL LERMA.

13      7.   The Michael Lerma Cell of the Mexican Mafia operates to
14  carry out the goals and objectives of the Mexican Mafia in Pomona and
15  in some surrounding neighborhoods, including by directing and
16  controlling drug trafficking activities and the distribution of drug
17  trafficking proceeds, as well as the enforcement of Mexican Mafia
18  rules both in and surrounding Pomona.  More specifically:

19          a.   Members and associates of the Michael Lerma Cell of
20  the Mexican Mafia in prisons or jails send instructions to local
21  street gangs and other Mexican Mafia members and associates, both
22  inside and outside prison and jail, via telephone calls, prison
23  system e-mails, letters, "kites" (which are notes smuggled by
24  prisoners), "verbals" (passing a particularly sensitive message
25  verbally from inmate to inmate), and by conveying messages through
26  jail or prison visitors.  Members and associates of the Michael Lerma
27  Cell of the Mexican Mafia generally use coded language in order to
28  conceal the true nature of their discussions with and instructions to

1   criminal associates.  In order to pass on instructions and

2   information from prison and jail, members and associates of the

3   Michael Lerma Cell of the Mexican Mafia generally rely on associates,

4   often female, known as "secretaries," who communicate with

5   incarcerated Mexican Mafia members and associates and relay their

6   instructions to others.  In addition, attorneys who are willing to

7   assist in the Mexican Mafia's criminal activities are utilized by the

8   Mexican Mafia to pass messages concerning these activities and to

9   facilitate communication among its members and associates.  These

10   attorneys are particularly valued by members of the Mexican Mafia

11   because they provide a means to shield criminal communications from

12   law enforcement by providing the appearance of attorney-client

13   privilege and a veneer of legitimacy to their criminal

14   communications.  Both secretaries and attorneys are treated as

15   respected criminal figures by members of street gangs controlled by

16   and/or affiliated with the Mexican Mafia.

17         b.    The Michael Lerma Cell of the Mexican Mafia commonly

18   extorts money from gang members and associates who violate enterprise

19   and Mexican Mafia rules and from those who want to engage in

20   profitable activities in areas controlled by the Michael Lerma Cell

21   of the Mexican Mafia.  If the gang member or associate does not pay

22   the demanded sum, or has violated Mexican Mafia or enterprise rules,

23   a Mexican Mafia leader commonly will order that the person be

24   assaulted until that individual complies.  Alternatively, if the non-

25   compliant individual refuses to pay, or if the enterprise is not able

26   to punish the individual, the Michael Lerma Cell of the Mexican Mafia

27   may extort or punish family members, close associates, members of

28   that person's gang, or others related to the person.  If a person or

1  gang does not meet the Michael Lerma Cell of the Mexican Mafia's
2  payment demands, they will be subjected to violence until they
3  comply.

4        c.   One of the Michael Lerma Cell of the Mexican Mafia's
5  most effective ways of making money is by controlling the sale of
6  drugs.  On the streets, profiting from drug trafficking takes the
7  form of "taxing" drug dealers.  All drug dealers in an area
8  controlled by the Michael Lerma Cell of the Mexican Mafia must pay a
9  percentage of their profits from the sale of drugs to the enterprise.
10 If the drug dealer does not pay, he will not be allowed to sell drugs
11 in that area under threat of assault or even death.  If the drug
12 dealer does pay the tax, the drug dealer benefits by receiving
13 protection from other dealers or robbers and gains assistance in
14 collecting debts.

15       d.   The Michael Lerma Cell of the Mexican Mafia also makes
16 money by extorting or taxing gang members and other Hispanic inmates
17 in prison through the "kitty."  In every yard of the California
18 prison system, inmates are allowed to purchase items from the prison-
19 operated store or commissary.  These items include candy bars, soup,
20 ramen noodles, shower shoes, deodorant, baby powder, and other food
21 and personal hygiene items.  In every prison yard or portion thereof
22 controlled by the Michael Lerma Cell of the Mexican Mafia, every
23 Hispanic gang member, paisa, or resident is required to contribute
24 commissary items of a certain value (e.g., one dollar's worth of
25 items) into the "kitty" for every set amount of items purchased
26 (e.g., fifteen dollars' worth).  The Mexican Mafia member in control
27 of the yard or portion thereof sets the contribution rates for the
28 "kitty," and a shot-caller collects the commissary items and sells

1   them to a person in the yard for a price that is also set by the
2   Mexican Mafia member.  The payment for the "kitty" is made to a
3   secretary or facilitator outside of the facility, who forwards it to
4   the Mexican Mafia member who controls the portion of the facility
5   that the "kitty" was collected from.

6        e.   In addition, the Michael Lerma Cell of the Mexican
7   Mafia may subject any person or inmate in a controlled neighborhood,
8   facility, or, module to extortion for any money-generating activity
9   he or she engages in while in the enterprise controlled territory.

10       f.   The Michael Lerma Cell of the Mexican Mafia has self-
11  imposed rules handed down by the Mexican Mafia.  These rules,
12  referred to as "reglas," are imposed to maintain fear and compliance
13  among Surenos who are or who may become incarcerated in a jail or
14  prison.  Because these rules provide a basis for being fined as well
15  as assaulted, they are a key part of the Michael Lerma Cell of the
16  Mexican Mafia's extortion scheme.  If a southern California Hispanic
17  gang member should break one of these rules, discipline is imposed by
18  a facilitator, shot-caller, or secretary of the Mexican Mafia member
19  in control of the facility.  Such discipline is frequently imposed in
20  the form of a fine or an assault.  Assaults are often referred to as
21  "13 Seconds," "26 Seconds," or "39 Seconds."  The premise underlying
22  these punishments is that a person who breaks an enterprise rule
23  should be punished by beatings for either 13 seconds, or for a
24  multiple of 13 seconds.  Thirteen seconds is a less severe form of
25  punishment that usually involves two individuals assaulting the
26  offender for thirteen seconds.  Thirty-nine seconds is a more severe
27  form of punishment that involves three (or in some cases more)
28  individuals assaulting the offender for 39 seconds.  "Thirty-nine

Seconds" can have different variations.  For example, "39 Seconds" could be issued in the form of three 13-second assaults on the same day (sometimes referred to as "breakfast, lunch, and dinner") or it could be one 39-second assault.  A 39-second punishment where three individuals assault an offender for 39 consecutive seconds is also commonly referred to as a "smash out" because the offender is usually moved out of the area after the assault for his own safety by prison or jail personnel.  Finally, "sopas," the Spanish word for "soups," is another common term for an assault.

g.    One of the most important rules for which discipline may be imposed by the Michael Lerma Cell of the Mexican Mafia is a prohibition on cooperating with law enforcement.

h.    The most serious form of discipline is being put on the "green light list" or being "greenlighted."  Being placed on the green light list means that every Sureno is obligated to severely assault the person, even if death is likely to result.  This applies both inside and outside of custody facilities.  Only true/full members of the Mexican Mafia can put a person, group, or entire gang on the green light list.  Those who are put on a green light list can be removed by the payment of a hefty fine.

B.    PURPOSES OF THE ENTERPRISE

8.    The purposes of the Michael Lerma Cell of the Mexican Mafia include, but are not limited to, the following:

a.    Enriching members and associates of the Michael Lerma Cell of the Mexican Mafia through, among other things, the control of and participation in the distribution of controlled substances in and around the City of Pomona, and extortion of others engaged in the

///

13

distribution of controlled substances and other crimes in and around the City of Pomona and in portions of Calipatria State Prison.

      b.   Enriching members by engaging in and taxing other illegal activities, including identity theft and fraud, in and around the City of Pomona.

      c.   Maintaining the control and authority of Michael Lerma Cell of the Mexican Mafia in and around Pomona and in portions of Calipatria State Prison, often through threats, intimidation, and acts of violence against persons involved in drug dealing and other crimes, rival gang members, witnesses to their criminality, and local residents.

      d.   Promoting and enhancing the Michael Lerma Cell of the Mexican Mafia's members and associates and their activities.

      e.   Punishing Mexican Mafia members and associates who do not comply with the rules and orders of the Mexican Mafia, including those who cooperate with law enforcement.

C.   THE MEANS AND METHODS OF THE ENTERPRISE

   9.   The means and methods by which the defendants and their associates conduct and participate in the conduct of the affairs of the Michael Lerma Cell of the Mexican Mafia include the following:

      a.   Engaging in drug trafficking in and around the City of Pomona and in portions of Calipatria State Prison as a means to generate income.

      b.   Engaging in extortion as a means to generate income.

      c.   Working together to collect a portion of the proceeds of drug trafficking conducted by street gang members and others in and around the City of Pomona and in portions of Calipatria State Prison.

1          d.    Working together to commit robbery.

2          e.    Working together to commit identify theft and fraud.

3          f.    Committing, attempting to commit, and threatening to commit acts of violence to protect and expand the enterprise's criminal operation, including kidnapping, assaults, murders, acts of intimidation, and threats of violence directed against rival gang members, witnesses to the Michael Lerma Cell of the Mexican Mafia's criminal conduct, and Mexican Mafia members and associates who do not follow the rules and orders of the Mexican Mafia in general.

          g.    Promoting a climate of fear, particularly among rival gang members, potential witnesses to the gang's criminal conduct, and Hispanic gang members, Paisas, or others who may cooperate with law enforcement, through acts of violence and threats to commit acts of violence.

          h.    Engaging in the aforementioned criminal activity in the presence of other members and associates of the Michael Lerma Cell of the Mexican Mafia for mutual protection and in order to enhance the status of those affirmatively conducting the criminal acts, and committing the aforementioned criminal activity for the purpose of earning the respect of the members of the Michael Lerma Cell of the Mexican Mafia in the hope of achieving higher status.

          i.    In the case of more senior members of the Michael Lerma Cell of the Mexican Mafia, and their designated assistants, including secretaries, shot-callers, and facilitators, providing instructions to junior members and associates regarding the distribution of controlled substances, the collection of proceeds from the sale of controlled substances and proceeds from extortion, the taxing of drug dealers, the direction of identity theft and

1  fraud, the commission of acts of violence, and providing verification

2  that such crimes have occurred.

3       j.   In the case of more junior members and associates of

4  the Michael Lerma Cell of the Mexican Mafia, engaging in the

5  distribution of controlled substances, the collection of proceeds

6  from the sale of controlled substances and proceeds from extortion,

7  the taxing of drug dealers, identity theft and fraud, and the

8  commission of acts of violence and providing verification that such

9  crimes have occurred.

10  D.   OBJECT OF THE CONSPIRACY

11       10.  Beginning on a date unknown, and continuing to the date of

12  this Indictment, in Los Angeles and San Bernardino Counties, within

13  the Central District of California, and elsewhere, defendants LERMA,

14  PEREZ-CASTANEDA, I. PEREZ, S. GONZALEZ, C. GONZALEZ, SANCHEZ, J.V.

15  GONZALEZ, MARTINEZ, DESHANNON, T. PEREZ, DIAZ, and INCLAN, and others

16  known and unknown to the Grand Jury, being persons employed by and

17  associated with the Michael Lerma Cell of the Mexican Mafia, an

18  enterprise which was engaged in, and the activities of which

19  affected, interstate and foreign commerce, knowingly and

20  intentionally conspired to violate Title 18, United States Code,

21  Section 1962(c), that is, to conduct and participate, directly and

22  indirectly, in the conduct of the affairs of that enterprise through

23  a pattern of racketeering activity, as that term is defined in Title

24  18, United States Code, Sections 1961(1) and 1961(5), consisting of:

25       multiple acts involving:

26       a.   Murder, in violation of California Penal Code Sections

27  21a, 31, 182, 187, 189, and 664;

28  ///

b.   Kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, 209, and 664;

c.   Robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

d.   Extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 524, and 664;

multiple offenses involving:

e.   the distribution of, possession with intent to distribute, and conspiracy to distribute and possess with intent to distribute controlled substances, including methamphetamine, and heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

and multiple acts indictable under the following provisions of federal law:

f.   Title 18, United States Code, Sections 1956 and 1957, Money Laundering;

g.   Title 18, United States Code, Section 1512, Tampering with a Witness, Victim, or an Informant;

h.   Title 18, United States Code, Section 1028, Identity Fraud; and

i.   Title 18, United States Code, Section 1029, Access Device Fraud.

11.   It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

///

///

///

17

E.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

     12.   The object of the conspiracy was to be accomplished, in
substance, as follows:

          a.   Defendant LERMA, as a full member of the Mexican
Mafia, would have the right to control and collect criminal proceeds
from certain neighborhoods or correctional facilities throughout the
Central District of California and elsewhere, including in and around
the City of Pomona and in Calipatria State Prison.  Defendant LERMA
would control Pomona and portions of Calipatria State Prison during
all times relevant to this Indictment.

          b.   Defendants PEREZ-CASTANEDA and I. PEREZ would be
appointed as top-level associates, known as "Senoras," of defendant
LERMA and would act with the authority of defendant LERMA.

          c.   Defendants PEREZ-CASTANEDA and I. PEREZ would work for
and carry out the orders of defendant LERMA in Pomona.

          d.   Defendant PEREZ-CASTANEDA would coordinate the
collection of taxes from portions of Calipatria State Prison on
behalf of defendant LERMA.

          e.   Defendants PEREZ-CASTANEDA and T. PEREZ would forward
proceeds to defendant LERMA's prison account.

          f.   Defendant S. GONZALEZ would carry out the orders of
defendants LERMA and PEREZ-CASTANEDA in Pomona.

          g.   Defendants PEREZ-CASTANEDA, S. GONZALEZ, C. GONZALEZ,
SANCHEZ, J.V. GONZALEZ, MARTINEZ, DESHANNON, and T. PEREZ, and
unindicted co-conspirator one ("UICC-1") would engage in acts of
violence in furtherance of the Michael Lerma Cell of the Mexican
Mafia.

1    h.   Defendants PEREZ-CASTANEDA, S. GONZALEZ, and DIAZ
2    would direct others to collect taxes in Pomona on behalf of the
3    Michael Lerma Cell of the Mexican Mafia.

4    i.   Defendants I. PEREZ, C. GONZALEZ, J.V. GONZALEZ,
5    MARTINEZ, DIAZ, and INCLAN would collect taxes in Pomona on behalf of
6    the Michael Lerma Cell of the Mexican Mafia.

7    j.   Unindicted co-conspirator two ("UICC-2") would collect
8    proceeds from Calipatria State Prison.

9    k.   Unindicted co-conspirator three ("UICC-3"), as a full
10   member of the Mexican Mafia, would give additional Mexican Mafia
11   sanction to the activities of the Michael Lerma Cell of the Mexican
12   Mafia.

13   F.   OVERT ACTS

14   13.   In furtherance of the conspiracy and to accomplish its
15   object, on or about the following dates, defendants LERMA, PEREZ-
16   CASTANEDA, I. PEREZ, S. GONZALEZ, C. GONZALEZ, SANCHEZ,
17   J.V. GONZALEZ, MARTINEZ, DESHANNON, T. PEREZ, DIAZ, and INCLAN, and
18   others known and unknown to the Grand Jury, committed various overt
19   acts within the Central District of California, and elsewhere,
20   including, but not limited to, the following:

21   Forwarding of Proceeds to Defendant LERMA

22   Overt Act No. 1:   On February 8, 2012, defendant PEREZ-
23   CASTANEDA deposited $120 into the inmate trust account of defendant
24   LERMA at Pelican Bay State Prison.

25   Overt Act No. 2:   On September 11, 2012, defendant PEREZ-
26   CASTANEDA deposited $100 into the inmate trust account of defendant
27   LERMA at Pelican Bay State Prison.

28   ///

Collection and Laundering of Proceeds from Calipatria State Prison

Overt Act No. 3:    On January 25, 2013, in a recorded text message, defendant PEREZ-CASTANEDA directed UICC-2 to send a Green Dot card number representing proceeds of activities, including extortion, of the Michael Lerma Cell of the Mexican Mafia from Calipatria State Prison to defendant PEREZ-CASTANEDA.

Overt Act No. 4:    On January 25, 2013, in a recorded text message, UICC-2 sent a Green Dot card number representing proceeds from activities, including extortion, of the Michael Lerma Cell of the Mexican Mafia from Calipatria State Prison to defendant PEREZ-CASTANEDA.

Overt Act No. 5:    On January 27, 2013, in a recorded text message, defendant PEREZ-CASTANEDA directed UICC-2 to send a Green Dot card number representing proceeds from activities, including extortion, of the Michael Lerma Cell of the Mexican Mafia from Calipatria State Prison to defendant PEREZ-CASTANEDA.

Overt Act No. 6:    On January 27, 2013, in a recorded text message, UICC-2 sent a Green Dot card number representing proceeds from activities, including extortion, from Calipatria State Prison to defendant PEREZ-CASTANEDA.

Overt Act No. 7:    On January 30, 2013, in a recorded telephone call, defendant PEREZ-CASTANEDA directed UICC-2 to send Green Dot card numbers representing proceeds from activities, including extortion, of the Michael Lerma Cell of the Mexican Mafia from Calipatria State Prison to defendant PEREZ-CASTANEDA.

Overt Act No. 8:    On January 30, 2013, in a recorded text message, UICC-2 sent Green Dot card numbers representing proceeds from activities, including extortion, of the Michael Lerma Cell of

the Mexican Mafia from Calipatria State Prison to defendant PEREZ-
CASTANEDA.

Overt Act No. 9:   On February 2, 2013, in a recorded text
message, UICC-2 sent Green Dot card numbers representing proceeds
from activities, including extortion, of the Michael Lerma Cell of
the Mexican Mafia from Calipatria State Prison to defendant PEREZ-
CASTANEDA.

Overt Act No. 10:   On February 4, 2013, in a recorded text
message, UICC-2 sent Green Dot card numbers representing proceeds
from activities, including extortion, of the Michael Lerma Cell of
the Mexican Mafia from Calipatria State Prison to defendant PEREZ-
CASTANEDA.

Conspiracy to Assault or Murder S.L.

Overt Act No. 11:   Between March 24, 2013, and July 1, 2013,
defendant PEREZ-CASTANEDA asked for defendant LERMA's permission to
assault or murder S.L. for shooting defendant PEREZ-CASTANEDA's son
in front of defendant PEREZ-CASTANEDA's home in Pomona.

Overt Act No. 12:   From July 1, 2013, through July 27, 2013, in
recorded telephone conversations, defendants PEREZ-CASTANEDA and
S. GONZALEZ discussed finding S.L. within Los Angeles County Jail in
order to have him stabbed.

Overt Act No. 13:   On or before July 15, 2013, UICC-3 gave his
approval for the assault or murder of S.L.

Overt Act No. 14:   On July 15, 2013, in a recorded telephone
conversation, defendant PEREZ-CASTANEDA told defendant S. GONZALEZ
that she ordered the assault or murder of S.L., that her order was
under defendant LERMA'S authority, and that UICC-3 approved of the
order.

Overt Act No. 15:   On July 27, 2013, unknown co-conspirators assaulted S.L. in the Los Angeles County Jail ("LACJ") on the orders of defendants PEREZ-CASTANEDA and S. GONZALEZ.

Overt Act No. 16:   On July 28, 2013, defendant S. GONZALEZ informed defendant PEREZ-CASTANEDA that S.L. had been assaulted in LACJ.

Overt Act No. 17:   On August 24, 2013, in a coded letter, defendant LERMA gave his approval for the assault or murder of S.L.

Overt Act No. 18:   On February 14, 2014, UICC-1 requested that an associate, who was in fact a confidential informant working for law enforcement (the "CI"), find S.L. in LACJ so that S.L. could be assaulted or murdered for falsely claiming that UICC-3 had approved of the shooting of defendant PEREZ-CASTANEDA's son.

Overt Act No. 19:   On February 28, 2014, UICC-1 told the CI that he wanted S.L. to be stabbed for falsely claiming to have UICC-3's blessing for shooting defendant PEREZ-CASTANEDA's son.

Taxation of Pomona-Area Criminal Activity

Overt Act No. 20:   From at least February 8, 2012, to the present, defendant LERMA controlled the taxing of drug dealers in and around the City of Pomona and directed defendants PEREZ-CASTANEDA and MARTINEZ and others to collect those taxes.

Overt Act No. 21:   In July and August 2013, defendant PEREZ-CASTANEDA directed the taxing of drug dealers in and around Pomona on behalf of defendant LERMA.

Overt Act No. 22:   On July 12, 2013, in a recorded telephone conversation, defendants S. GONZALEZ and J.V. GONZALEZ discussed the following: taxing the proceeds from the sale of methamphetamine by a unindicted co-conspirator four ("UICC-4") in areas controlled by

22

defendant LERMA; the amount that UICC-4 had paid in taxes; and that UICC-4 complained that the amount of taxes was too high.

Overt Act No. 23:   On July 14, 2013, in a recorded telephone conversation, defendants S. GONZALEZ and J.V. GONZALEZ discussed the following: taxing a drug selling location known as "The Compound"; that defendant LERMA only wanted proceeds from the sale of heroin; that defendant J.V. GONZALEZ had taxed UICC-4's proceeds from the sale of methamphetamine in areas controlled by defendant LERMA; that defendants S. GONZALEZ and J.V. GONZALEZ would keep the proceeds from the taxing of the sale of methamphetamine; and that defendant PEREZ-CASTANEDA would begin supplying heroin for The Compound.

Overt Act No. 24:   On July 21, 2013, in a recorded telephone conversation, defendant PEREZ-CASTANEDA told defendant S. GONZALEZ that she approved of the taxation of The Compound.

Overt Act No. 25:   In July and August 2013, defendant PEREZ-CASTANEDA directed defendant MARTINEZ to collect taxes from drug dealers in south Pomona.

Overt Act No. 26:   In July and August 2013, defendant MARTINEZ collected taxes from drug dealers in south Pomona.

Overt Act No. 27:   On August 4, 2013, defendant MARTINEZ possessed a .32 caliber handgun to protect himself while collecting taxes from drug dealers in south Pomona.

Possession of Drugs

Overt Act No. 28:   On August 4, 2013, defendant MARTINEZ possessed approximately 11.2 grams of methamphetamine for further distribution in and around Pomona.

///

///

Overt Act No. 29:   On December 2, 2013, in an area controlled by defendant LERMA in Pomona, UICC-4 possessed for purposes of sale approximately 128.9 grams of methamphetamine and 8.6 grams of heroin.

Attempted Robbery, Extortion, and Carjacking

Overt Act No. 30:   Beginning prior to July 12, 2013, defendant S. GONZALEZ demanded a Mercedes automobile from then-LACJ inmate W.M.

Overt Act No. 31:   On or before July 12, 2013, defendant S. GONZALEZ directed defendant DESHANNON to take a Mercedes automobile belonging to W.M. that was in the custody of E.N.

Overt Act No. 32:   On July 12, 2013, defendant DESHANNON attempted to take W.M.'s Mercedes automobile from E.N., to whom W.M. had entrusted the automobile.

Overt Act No. 33:   Between July 12, 2013, and July 14, 2013, upon defendant DESHANNON's failure to obtain W.M.'s automobile, defendant S. GONZALEZ directed defendant PEREZ-CASTANEDA to gather more people to take the automobile.

Overt Act No. 34:   On July 14, 2013, defendants DESHANNON, T. PEREZ, PEREZ-CASTANEDA, and J.V. GONZALEZ went to the home of E.N. to take the Mercedes automobile by force or fear.

Overt Act No. 35:   On July 14, 2013, defendant PEREZ-CASTANEDA assaulted E.N. in order to take the Mercedes automobile.

Overt Act No. 36:   On July 14, 2013, defendant J.V. GONZALEZ shot M.A. when E.N. and M.A. resisted efforts to take the Mercedes automobile.

Overt Act No. 37:   On July 14, 2013, in a recorded telephone call, defendants DESHANNON, T. PEREZ, PEREZ-CASTANEDA, and J.V. GONZALEZ reported to defendant S. GONZALEZ that they had attempted to take the Mercedes automobile and had shot M.A.

24

Possession of a Firearm

Overt Act No. 38:   From no later than October 17, 2013, through October 28, 2013, defendant C. GONZALEZ possessed a Walther Model PPK .380 caliber semi-automatic pistol bearing serial number 060360, seven rounds of Winchester .380 caliber ammunition, and one round of CCI/Speer .380 caliber ammunition in his residence in Pomona.

Forwarding of Proceeds to Defendant LERMA

Overt Act No. 39:   On October 14, 2014, defendant T. PEREZ deposited $150 into the inmate trust account of defendant LERMA at Pelican Bay State Prison.

Overt Act No. 40:   On December 24, 2014, defendant T. PEREZ deposited $200 into the inmate trust account of defendant LERMA at Pelican Bay State Prison.

Kidnapping, Extortion, and Planned Murder of C.V.

Overt Act No. 41:   Prior to April 19, 2015, defendants C. GONZALEZ and SANCHEZ, and unindicted co-conspirators five ("UICC-5") and six ("UICC-6"), engaged in check fraud, identity theft, counterfeiting, and other crimes, and defendant PEREZ-CASTANEDA taxed these criminal activities.

Overt Act No. 42:   Between April 19, 2015, and April 24, 2015, UICC-5 restrained C.V. against her will at his residence in Claremont and took C.V.'s possessions, including her recreational vehicle, identification, money, and other items.

Overt Act No. 43:   On May 4, 2015, defendant C. GONZALEZ forced C.V. to post $500 bail for UICC-6.

Overt Act No. 44:   On May 5, 2015, defendant C. GONZALEZ ordered that C.V. be moved from UICC-5's residence in Claremont to

///

the residence of unindicted co-conspirator seven ("UICC-7") in Temple City.

Overt Act No. 45:   From May 5, 2015, through May 8, 2015, defendant C. GONZALEZ directed that UICC-7 hold C.V. against her will and visited UICC-7's residence to ensure that C.V. was being held.

Overt Act No. 46:   From May 5, 2015, through May 8, 2015, UICC-7 held C.V. against her will at defendant C. GONZALEZ's direction.

Overt Act No. 47:   On May 8, 2015, defendants PEREZ-CASTANEDA and C. GONZALEZ and other unindicted coconspirators met in a bedroom of UICC-7's residence to discuss the extortion and murder of C.V.

Overt Act No. 48:   On May 8, 2015, during the meeting, defendant PEREZ-CASTANEDA ordered defendant C. GONZALEZ and UICC-7 to take C.V. to retrieve the bail money for UICC-6, ordered that defendant C. GONZALEZ give defendant PEREZ-CASTANEDA that money, and authorized the murder of C.V.

Overt Act No. 49:   On May 8, 2015, during the meeting, defendant C. GONZALEZ stated his intention to murder C.V.

Overt Act No. 50:   On May 8, 2015, after leaving the meeting at UICC-7's residence, defendant C. GONZALEZ ordered UICC-7 to bring C.V. to his residence so that they could collect the bail money and kill C.V.

Overt Act No. 51:   On May 8, 2015, C.V. was driven to defendant C. GONZALEZ' residence in Pomona.

Overt Act No. 52:   On May 8, 2015, defendant C. GONZALEZ brought a firearm and handcuffs into the vehicle in which C.V. was a passenger and handcuffed C.V.

///

///

1      Overt Act No. 53:  On May 8, 2015, defendant SANCHEZ brought a

2  firearm and a backpack containing C.V.'s belongings into the vehicle

3  in which C.V. was a passenger.

4  Tax Collection and Possession of a Firearm

5      Overt Act No. 54:  Beginning on July 23, 2013, and continuing

6  through June 18, 2015, defendant MARTINEZ collected taxes in the City

7  of Pomona for defendants PEREZ-CASTANEDA and LERMA.

8      Overt Act No. 55:  On June 18, 2015, defendant MARTINEZ, while

9  in a vehicle in the City of Pomona, possessed a Ruger model P85 MKII

10 9mm caliber semi-automatic pistol, bearing a partially obliterated

11 serial number.

12 Possession of Drugs

13     Overt Act No. 56:  On June 18, 2015, while in a vehicle in the

14 City of Pomona, defendant MARTINEZ and unindicted co-conspirators

15 possessed approximately three grams of methamphetamine with intent to

16 further distribute.

17 Forwarding of Proceeds to Defendant LERMA

18     Overt Act No. 57:  On June 14, 2015, defendant T. PEREZ

19 deposited $100 into the inmate trust account of defendant LERMA at

20 Pelican Bay State Prison.

21     Overt Act No. 58:  On August 26, 2015, defendant T. PEREZ

22 deposited $100 into the inmate trust account of defendant LERMA at

23 Pelican Bay State Prison.

24 Tax Collection

25     Overt Act No. 59:  On February 19, 2016, defendant DIAZ

26 collected taxes in Pomona.

27     Overt Act No. 60:  On March 1, 2016, during a recorded

28 telephone conversation, defendant DIAZ asked defendant I. PEREZ to

1  collect taxes from drug dealers in Pomona known as "Adrian," Travis,"

2  and "TP."

3      Overt Act No. 61:   On March 2, 2016, in a recorded telephone

4  conversation, defendant DIAZ asked defendant I. PEREZ to ask

5  defendant LERMA whether defendant DIAZ would continue to be defendant

6  LERMA'S shot-caller for Pomona after defendant DIAZ's release from

7  jail.

8      Overt Act No. 62:   On March 3, 2016, during a recorded

9  telephone conversation, defendant DIAZ asked defendant INCLAN to

10  collect taxes from drug dealers in Pomona known as "Adrian,"

11  "Travis," and "TP," to give those taxes to defendant I. PEREZ, and to

12  increase the taxes if the drug dealers don't pay within three days.

13      Overt Act No. 63:   On March 3, 2016, during a recorded

14  telephone conversation, defendant DIAZ asked defendant INCLAN to

15  obtain defendant LERMA's prison cell phone phone number.

16      Overt Act No. 64:   On March 9, 2016, defendant INCLAN,

17  collected $75 in taxes from a Pomona drug dealer known as "Travis."

18      Overt Act No. 65:   On March 9, 2016, defendant I. PEREZ put $50

19  from the taxing of "Travis" onto the inmate trust account of

20  defendant DIAZ.

21      Overt Act No. 66:   On March 13, 2016, defendant INCLAN

22  collected $50 in taxes from a Pomona drug dealer known as "Travis."

23  Possession of a Firearm and Heroin

24      Overt Act No. 67:   On July 1, 2016, defendant DIAZ possessed a

25  Smith & Wesson model SW9VW 9mm caliber semi-automatic pistol, bearing

26  serial number DUM0731, and approximately 7.49 grams of heroin for

27  purposes of distribution.

28  ///

G.   SPECIAL SENTENCING ALLEGATIONS

14.   Beginning no later than on or about April 19, 2015, and continuing to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, defendants PEREZ-CASTANEDA, C. GONZALEZ, and SANCHEZ conspired to intentionally kill C.V. with malice aforethought, in violation of California Penal Code Sections 182, 187, and 189.

15.   Beginning no later than on or about April 19, 2015, and continuing to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, defendants PEREZ-CASTANEDA, GONZALEZ, and SANCHEZ, aiding and abetting each other, kidnapped C.V., that is, seized, confined, abducted, concealed, and carried away, with intent to hold and detain C.V., and held and detained C.V. to commit extortion, in violation of California Penal Code Sections 31 and 209.

COUNT TWO

[18 U.S.C. §§ 1959(a)(3), 2]

1.    Paragraphs 1 through 11 of the General Allegations of this Indictment and paragraphs 2 through 9 of Count One of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    At all times relevant to this Indictment, the Michael Lerma Cell of the Mexican Mafia, including its leaders, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    At all times relevant to this Indictment, the Michael Lerma Cell of the Mexican Mafia, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1), and 1961(1), consisting of:

multiple acts involving:

        a.    Murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

        b.    Kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, 209, and 664;

        c.    Robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

        d.    Extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 524, and 664;

1    multiple offenses involving:

2        e.   the distribution of, possession with intent to

3    distribute, and conspiracy to distribute and possess with intent to

4    distribute controlled substances, including methamphetamine and

5    heroin, in violation of Title 21, United States Code, Sections

6    841(a)(1) and 846;

7        and multiple acts indictable under the following provisions of

8    federal law:

9        f.   Title 18, United States Code, Sections 1956 and 1957,

10   Money Laundering;

11       g.   Title 18, United States Code, Section 1512, Tampering

12   with a Witness, Victim, or an Informant;

13       h.   Title 18, United States Code, Section 1028, Identity

14   Fraud; and

15       i.   Title 18, United States Code, Section 1029, Access

16   Device Fraud.

17       4.   On or about July 14, 2013, in Los Angeles County, within

18   the Central District of California, for the purpose of maintaining

19   and increasing position in the Michael Lerma Cell of the Mexican

20   Mafia, an enterprise engaged in racketeering activity, defendants

21   JOSE VALENCIA GONZALEZ, also known as ("aka") "Swifty," SEFERINO

22   GONZALEZ, aka "Spooky," CHERYL PEREZ-CASTANEDA, aka "Cheryl Perez,"

23   aka "Cheryl Castaneda," aka "C," aka "Cherri, and KELLY DESHANNON,

24   aiding and abetting each other, unlawfully and knowingly assaulted

25   M.A. with a dangerous weapon, that is, a firearm, resulting in

26   serious bodily injury in violation of California Penal Code Sections

27   31, 245(a)(2), and (4).

28

COUNT THREE

[18 U.S.C. § 1959(a)(6)]

1.    Paragraphs 1 through 11 of the General Allegations of this Indictment, paragraphs 2 through 9 of Count One of this Indictment, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    From prior to July 12, 2013, through on or about July 14, 2013, in Los Angeles County within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants JOSE VALENCIA GONZALEZ, also known as ("aka") "Swifty," SEFERINO GONZALEZ, aka "Spooky," CHERYL PEREZ-CASTANEDA, aka "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri, and KELLY DESHANNON unlawfully and knowingly conspired to assault M.A. with a dangerous weapon, that is, a firearm, and to commit assault resulting in serious bodily injury, in violation of California Penal Code Sections 182, 245(a)(2), and (4).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FOUR

[18 U.S.C. § 1959(a)(6)]

1.   Paragraphs 1 through 11 of the General Allegations of this Indictment, paragraphs 2 through 9 of Count One of this Indictment, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.   On or about February 28, 2014, in Los Angeles County within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants CHERYL PEREZ-CASTANEDA, also known as ("aka") "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri, and JOSE MONTANO, aka "Silent," aka "Bill," and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to assault S.L. with a dangerous weapon, in violation of California Penal Code Sections 182 and 245(a)(1).

COUNT FIVE

[18 U.S.C. § 1959(a)(5)]

1.    Paragraphs 1 through 11 of the General Allegations of this Indictment, paragraphs 2 through 9 of Count One of this Indictment, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    From on or about April 19, 2015, to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants CHERYL PEREZ-CASTANEDA, also known as ("aka") "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri," CARLOS GONZALEZ, aka "Popeye," and JUAN SANCHEZ, aka "Squeaks," unlawfully and knowingly conspired to kidnap C.V., in violation of California Penal Code Sections 182, 207, and 209.

COUNT SIX

[18 U.S.C. §§ 1959(a)(1), 2]

1.    Paragraphs 1 through 11 of the General Allegations of this Indictment, paragraphs 2 through 9 of Count One of this Indictment, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    Between on or about April 19, 2015, to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants CARLOS GONZALEZ, also known as ("aka") "Popeye," JUAN SANCHEZ, aka "Squeaks," and CHERYL PEREZ-CASTANEDA, aka "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri," aiding and abetting each other, unlawfully and knowingly kidnapped C.V., in violation of California Penal Code Sections 31, 207, and 209.

COUNT SEVEN

[18 U.S.C. § 1959(a)(5)]

1.    Paragraphs 1 through 11 of the General Allegations of this Indictment, paragraphs 2 through 9 of Count One of this Indictment, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    From on or about April 19, 2015, to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants CHERYL PEREZ-CASTANEDA, also known as ("aka") "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri," CARLOS GONZALEZ, aka "Popeye," and JUAN SANCHEZ, aka "Squeaks," conspired to intentionally murder C.V. with malice aforethought, in violation of California Penal Code Sections 182, 187, and 189.

COUNT EIGHT

[18 U.S.C. §§ 2119(2), 2]

1.    On or about July 14, 2013, in Los Angeles County, within the Central District of California, defendants CHERYL PEREZ-CASTANEDA, also known as ("aka") "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri," JOSE VALENCIA GONZALEZ, aka "Swifty," KELLY DESHANNON, and TRISHA PEREZ, aka "Trisha Aguirre," aka "Trish," aiding and abetting each other, with the intent to cause death and serious bodily harm, attempted to take a motor vehicle, namely, a Mercedes ML360 SUV, that had been transported, shipped, and received in interstate and foreign commerce, from the person and presence of another, namely, E.N. and M.A., by force and violence and by intimidation, resulting in serious bodily injury.

2.    Furthermore, defendant SEFERINO GONZALEZ, aka "Spooky," knowingly and intentionally aided, abetted, counseled, commended, induced and procured the commission of the offense alleged above, and willfully caused such offense to be done.

COUNT NINE

[21 U.S.C § 846]

1.    Paragraphs 1 through 11 of the General Allegations of this Indictment and paragraphs 2 through 9 of Count One of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

A.    OBJECTS OF THE CONSPIRACY

2.    Beginning on a date unknown to the Grand Jury and continuing to on or about the date of this Indictment, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants MICHAEL LERMA, also known as ("aka") "Pomona Mike," aka "Big Mike" ("LERMA"), CHERYL PEREZ-CASTANEDA, aka "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri" ("PEREZ-CASTANEDA"), INEZ PEREZ, aka "Nezzie," aka "Inez Lerma" ("I. PEREZ"), SEFERINO GONZALEZ, aka "Spooky" ("S. GONZALEZ"), CARLOS GONZALEZ, aka "Popeye" ("C. GONZALEZ"), JOSE VALENCIA GONZALEZ, aka "Swifty" ("J.V. GONZALEZ"), JOSE MARTINEZ, aka "Slim" ("MARTINEZ"), DANIEL DIAZ, aka "Bugsy," aka "Fam Bam" ("DIAZ"), and VICTOR INCLAN ("INCLAN"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally distribute, and possess with intent to distribute, the following controlled substances:

a.    at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii); and

b.    a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in

///

violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

B.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
    ACCOMPLISHED

    3.   The object of the conspiracy was to be accomplished, in substance, as follows:

         a.   Defendant LERMA, as a full member of the Mexican Mafia, would have the right to control and tax drug dealing in certain neighborhoods or correctional facilities throughout the Central District of California and elsewhere, including in and around the City of Pomona and in Calipatria State Prison.  Defendant LERMA would control Pomona and portions of Calipatria State Prison during all times relevant to this Indictment.

         b.   Defendants PEREZ-CASTANEDA and I. PEREZ would be appointed as top-level associates, known as "Señoras," of defendant LERMA and would coordinate and direct the taxing of drug sales in and around Pomona on behalf of defendant LERMA.

         c.   Defendant S. GONZALEZ would direct the sales of drugs and the taxing of drug sales in and around Pomona on behalf of defendants LERMA and PEREZ-CASTANEDA.

         d.   Defendants PEREZ-CASTANEDA, S. GONZALEZ, and DIAZ would direct others to collect taxes on the sale of drugs in and around Pomona on behalf of defendant LERMA.

         e.   Defendants I. PEREZ, C. GONZALEZ, J.V. GONZALEZ, MARTINEZ, and INCLAN would collect taxes on the sale of drugs in and around Pomona on behalf of defendant LERMA.

///
///

f.    Unindicted co-conspirator two ("UICC-2") would collect proceeds from the taxing of the sale of drugs in Calipatria State Prison.

C.    OVERT ACTS

4.    On or about the following dates, in furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants LERMA, PEREZ-CASTANEDA, I. PEREZ, S. GONZALEZ, C. GONZALEZ, J.V. GONZALEZ, MARTINEZ, DIAZ, and INCLAN, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, Overt Acts numbered 20-29, 54-56, and 59-67 as set forth in Section F of Count One of this Indictment, which are re-alleged and incorporated by reference as if fully set forth herein.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about August 4, 2013, in Los Angeles County, within the Central District of California, defendant JOSE MARTINEZ, also known as "Slim," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 11.2 grams, of methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C §§ 841(a)(1), (b)(1)(C)]

On or about June 18, 2015, in Los Angeles County, within the Central District of California, defendant JOSE MARTINEZ, also known as "Slim," knowingly and intentionally possessed with intent to distribute approximately 3.0 grams of methamphetamine, a Schedule II controlled substance.

COUNT TWELVE

[21 U.S.C §§ 841(a)(1), (b)(1)(C)]

On or about July 1, 2016, in Los Angeles County, within the Central District of California, defendant DANIEL DIAZ, also known as ("aka") "Bugsy," aka "Fam Bam," knowingly and intentionally possessed with intent to distribute approximately 7.49 grams of heroin, a Schedule I narcotic drug controlled substance.

COUNT THIRTEEN

[18 U.S.C. §§ 924(c)(1)(A), (i), (ii), (iii), 2]

1.    On or about July 14, 2013, in Los Angeles County, within the Central District of California, defendant JOSE VALENCIA GONZALEZ, also known as ("aka") "Swifty," knowingly used and carried a firearm, namely a Colt model Mustang Mark IV Series 80 .380 caliber semi-automatic pistol, bearing serial number MU58634, during and in relation to, and possessed that firearm in furtherance of, a crime of violence, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, Assault in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Two of this Indictment, Conspiracy to Assault in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(6), as charged in Count Three of this Indictment, and Attempted Carjacking, in violation of Title 18, United States Code, Section 2119(2), as charged in Count Eight of this Indictment, and a drug trafficking crime, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, and in so doing, brandished and discharged that firearm.

2.    Furthermore, defendants SEFERINO GONZALEZ, aka "Spooky," CHERYL PEREZ-CASTANEDA, aka "Cheryl Perez," aka "Cheryl Castaneda," aka "C," aka "Cherri," and KELLY DESHANNON knowingly and intentionally aided, abetted, counseled, commended, induced and procured the commission of the offense alleged above, and willfully caused such offense to be done.

COUNT FOURTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about August 4, 2013, in Los Angeles County, within the Central District of California, defendant JOSE MARTINEZ, also known as "Slim," knowingly used and carried a firearm, namely, a Savage Arms model 1907 .32 caliber semi-automatic pistol, bearing serial number 156584, during and in relation to, and possessed that firearm in furtherance of, a crime of violence, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, and a drug trafficking crime, namely Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, and Possession with Intent to Distribute Methamphetamine, in violation of Title 21 United States Code, Section 841(a)(1), as charged in Count Ten of this Indictment.

COUNT FIFTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about October 28, 2013, in Los Angeles County, within the Central District of California, defendant CARLOS GONZALEZ, also known as "Popeye," knowingly possessed a firearm, namely, a Walther model PPK .380 caliber semi-automatic firearm, bearing serial number 060360, in furtherance of a crime of violence, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, and a drug trafficking crime, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, and Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Nine of this Indictment.

COUNT SIXTEEN

[18 U.S.C. §§ 924(c)(1)(A)(i), 2]

1.   On or about May 8, 2015, in Los Angeles County, within the Central District of California, defendant JUAN SANCHEZ, also known as ("aka") "Squeaks," knowingly used and carried a firearm, namely a Rohm model RG-12 .22 caliber revolver, bearing serial number 52469, during and in relation to, and possessed that firearm in furtherance of, a crime of violence, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, Conspiracy to Commit Murder in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Five of this Indictment, Kidnapping in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Six of this Indictment, and Conspiracy to Murder in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Seven of this Indictment, and a drug trafficking crime, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, and in so doing, brandished that firearm.

2.   Furthermore, defendant CARLOS GONZALEZ, aka "Popeye," knowingly and intentionally aided, abetted, counseled, commended, induced and procured the commission of the offense alleged above, and willfully caused such offense to be done.

COUNT SEVENTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about June 18, 2015, in Los Angeles County, within the Central District of California, defendant JOSE MARTINEZ, also known as "Slim," knowingly used and carried a firearm, namely, a Ruger Model P85 MKII 9mm caliber semi-automatic pistol, bearing a partially obliterated serial number, during and in relation to, and possessed that firearm in furtherance of, a drug trafficking crime, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Nine of this Indictment, and Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Count Eleven of this Indictment.

COUNT EIGHTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about July 1, 2016, in Los Angeles County, within the Central District of California, defendant DANIEL DIAZ, also known as ("aka") "Bugsy," aka "Fam Bam," knowingly possessed a firearm, namely, a Smith & Wesson model SW9VW 9mm caliber semi-automatic pistol, bearing serial number DUM0731, in furtherance of a crime of violence, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of 18 U.S.C. § 1962(d), as charged in Count One of this Indictment, and a drug trafficking crime, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Nine of this Indictment, and Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States, Code, Section 841(a)(1), as charged in Count Twelve of this Indictment.

COUNT NINETEEN

[18 U.S.C. § 924(o)]

On or about May 8, 2015, in Los Angeles County, within the Central District of California, defendants CARLOS GONZALEZ, also known as ("aka") "Popeye," and JUAN SANCHEZ, aka "Squeaks," conspired and agreed with each other to knowingly use and carry a firearm, namely a Rohm model RG-12 .22 caliber revolver, bearing serial number 52469, during and in relation to, and possess that firearm in furtherance of, a crime of violence, namely, Racketeer Influenced and Corrupt Organizations Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, Conspiracy to Commit Murder in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Five of this Indictment, Kidnapping in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Six of this Indictment, and Conspiracy to Murder in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Seven of this Indictment.

COUNT TWENTY

[18 U.S.C. § 922(g)(1)]

From on or about July 14, 2013, through July 17, 2013, in Los Angeles County, within the Central District of California, defendant JOSE VALENCIA GONZALEZ, also known as "Swifty" ("J.V. GONZALEZ"), knowingly possessed a firearm, namely, a Colt Model Mustang Mark IV Series 80 .380 caliber semi-automatic pistol, bearing serial number MU58634, and ammunition, namely, seven rounds of Winchester .380 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant J.V. GONZALEZ had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Second Degree Burglary, in violation of California Penal Code Section 459, in the Superior Court of the State of California, County of San Bernardino, case number FCH05640, on or about February 13, 2003;

(2) Possession of a Firearm by a Felon, in violation of California Penal Code, Section 12021(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA078221, on or about February 26, 2007;

(3) Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court of the State of California, County of Los Angeles, case number KA082815, on or about August 1, 2008;

(4) Possession of Contraband in Prison, in violation of California Penal Code Section 4573.6, in the Superior Court of the State of California, County of Riverside, case number RIF1101117, on or about July 20, 2012.

COUNT TWENTY-ONE

[18 U.S.C. § 922(g)(1)]

On or about August 4, 2013, in Los Angeles County, within the Central District of California, defendant JOSE MARTINEZ, also known as "Slim" ("MARTINEZ"), knowingly possessed a firearm, namely, a Savage Arms model 1907 .32 caliber semi-automatic pistol, bearing serial number 156584, and ammunition, namely, eight rounds of Fiocchi .32 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant MARTINEZ had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Carrying a Loaded Firearm, in violation of California Penal Code Section 12031(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA079947, on or about July 30, 2007;

(2) Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of San Bernardino, case number FWV803180, on or about December 16, 2008;

(3) Possession of Methamphetamine with Intent to Sell, in violation of California Health and Safety Code Section 11378, in the Superior County of the State of California, County of Los Angeles, case number KA090331, on or about May 13, 2010;

(4) Possession of a Firearm by a Felon, in violation of California Penal Code Section 12021(a)(1), and Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of

California, County of Los Angeles, case number BA392065, on or about January 5, 2012;

(5) Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013;

(6) Sale or Transportation of a Controlled Substance, in violation of California Health and Safety Code Section 11379(a), in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013;

(7) Possession of a Firearm by a Felon, in Violation of California Penal Code Section 29800(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA102714;

(8) Possession of Ammunition, in violation of California Penal Code Section 30305(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013;

(9) Driving a Vehicle without the Owner's Consent, in violation of California Vehicle Code Section 10851(a), in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013.

COUNT TWENTY-TWO

[18 U.S.C. § 922(g)(1)]

From on or about October 17, 2013, through October 28, 2013, in Los Angeles County, within the Central District of California, defendant CARLOS GONZALEZ, also known as "Popeye" ("C. GONZALEZ"), knowingly possessed a firearm, namely, a Walther model PPK .380 caliber semi-automatic pistol, bearing serial number 060360, and ammunition, namely, seven rounds of Winchester .380 caliber ammunition and one round of CCI/Speer .380 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant C. GONZALEZ had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Taking a Vehicle without the Owner's Consent, in violation of California Vehicle Code Section 10851, in the Superior Court of the State of California, County of Los Angeles, case number KA060041, on or about January 14, 2003;

(2) Possession of a Firearm by a Felon, in violation of California Penal Code Section 12021(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA085054, on about January 21, 2009.

COUNT TWENTY-THREE

[18 U.S.C. 922(g)(1)]

On or about May 8, 2015, in Los Angeles County, within the Central District of California, defendant JUAN SANCHEZ, also known as "Squeaks" ("SANCHEZ"), knowingly possessed a firearm, namely, a Rohm model RG-12 .22 caliber revolver, bearing serial number 52469, and ammunition, namely, seven rounds of Winchester .22 caliber ammunition and one round of CCI/Speer .22 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant SANCHEZ had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Carrying a Loaded Firearm, in violation of California Penal Code Section 25850(a), in the Superior Court of the State of California, County of San Bernardino, case number FWV1302331, on or about August 20, 2013;

(2) Burglary, in violation of California Penal Code Section 459, in the Superior Court of the State of California, County of Los Angeles, case number KA106933, on or about August 7, 2014;

(3) Identity Theft, in violation of California Penal Code Section 530.5, in the Superior Court of the State of California, County of Los Angeles, case number KA106933, on or about August 7, 2014.

55

COUNT TWENTY-FOUR

[18 U.S.C. 922(g)(1)]

On or about June 18, 2015, in Los Angeles County, within the Central District of California, defendant JOSE MARTINEZ, also known as "Slim" ("MARTINEZ"), knowingly possessed a firearm, namely, a Ruger model P85 MKII 9mm caliber semi-automatic pistol, bearing a partially obliterated serial number including the digits 303-0934, and ammunition, namely, nine rounds of Winchester 9mm caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant MARTINEZ had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Carrying a Loaded Firearm, in violation of California Penal Code Section 12031(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA079947, on or about July 30, 2007;

(2) Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of San Bernardino, case number FWV803180, on or about December 16, 2008;

(3) Possession of Methamphetamine with Intent to Sell, in violation of California Health and Safety Code Section 11378, in the Superior County of the State of California, County of Los Angeles, case number KA090331, on or about May 13, 2010;

(4) Possession of a Firearm by a Felon, in violation of California Penal Code Section 12021(a)(1), and Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of

California, County of Los Angeles, case number BA392065, on or about January 5, 2012;

(5) Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013;

(6) Sale or Transportation of a Controlled Substance, in violation of California Health and Safety Code Section 11379(a), in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013;

(7) Possession of a Firearm by a Felon, in Violation of California Penal Code Section 29800(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA102714;

(8) Possession of Ammunition, in violation of California Penal Code Section 30305(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013;

(9) Driving a Vehicle without the Owner's Consent, in violation of California Vehicle Code Section 10851(a), in the Superior Court of the State of California, County of Los Angeles, case number KA102714, on or about August 6, 2013.

COUNT TWENTY-FIVE

[18 U.S.C. 922(g)(1)]

On or about July 1, 2016, in Los Angeles County, within the Central District of California, defendant DANIEL DIAZ, also known as ("aka") "Bugsy," aka "Fam Bam" ("DIAZ"), knowingly possessed a firearm, namely, a Smith & Wesson model SW9VW 9mm caliber semi-automatic pistol, bearing serial number DUM0731, and ammunition, namely, 15 rounds of Federal 9mm caliber ammunition and one round of Winchester 9mm caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant DIAZ had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)   Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11350, in the Superior Court of the State of California, County of Los Angeles, case number KA094370, on or about May 31, 2011;

(2)   Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of Los Angeles, case number KA101165, on or about March 12, 2013;

(3)   Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of Los Angeles, case number KA106434, on or about July 1, 2014;

(4)   Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court of

///

the State of California, County of Los Angeles, case number KA106434,
on or about July 1, 2014;

    (5)  Felon in Possession of Ammunition, in violation of
California Penal Code Section 30305(a)(1), in the Superior Court of
the State of California, County of Los Angeles, case number KA106434,
on or about July 1, 2014.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1.  Paragraphs 1 through 11 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.  The allegations contained in Count One of this Indictment are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence, in accordance with Title 18, United States Code, Section 1963, in the event of any defendant's conviction under Count One of this Indictment.

3.  Any and each defendant convicted of Count One of this Indictment shall forfeit to the United States:

a.  any interest said defendant has acquired or maintained in violation of Title 18, United States Code, Section 1962;

b.  any interest in, security of, claim against, or property or contractual right affording a source of influence over, any enterprise which said defendant has established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

c.  any property constituting or derived from any proceeds obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

4.  Pursuant to Title 18, United States Code, Section 1963(m), each defendant so convicted shall forfeit substitute property, up to

the value of the property described in the preceding paragraph, if, as the result of any act or omission of that defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853]

1.    The allegations contained in the General Allegations and in Counts One and Nine of this Indictment are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 21, United States Code, Section 853. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 853, in the event of any defendant's conviction under any of Counts Nine through Twelve of this Indictment.

2.    Each defendant convicted under any of Counts Nine through Twelve shall forfeit to the United States any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation and any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

3.    Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 2, if, as the result of any act or omission of said defendant, the property described in paragraph 2, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

62

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 924(d); 28 U.S.C. § 2461]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18 United States Code, Section 924(d), of any defendant's conviction under of the Counts Thirteen through Twenty-Four of this Indictment.

2.    Such defendants shall forfeit to the United States all firearms and ammunition involved in the commission of each such offense, including all firearms and ammunition in this Indictment.

                                    A TRUE BILL

                                    /S/
                                    Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

SHAWN J. NELSON
Assistant United States Attorney
Acting Deputy Chief, Organized Crime
 Drug Enforcement Task Force Section

MAX B. SHINER
Assistant United States Attorney
Special Counsel to the United States
 Attorney for Violent Crime